# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 96-60458

---

BRENDA GAIL RITZER; WILLIAM W. RITZER; PATRICIA
BOSARGE; PATRICIA R. LANNING; RUSSELL W. LANNING;
DOBBINS EDWARDS; LILLIE V. GOODSON; LESTER LANNING;
MARGARET LANNING,

                                   Plaintiffs-Appellants/Cross-Appellees,

versus

T.L. JAMES CONSTRUCTION, INC.; DIXIE CONTRACTORS,
INC; MISSISSIPPI LEASING, INC., also known as Mississippi
Leasing Corporation; HARRISON COUNTY; WILLIAM
GILCHRIST, JR.,

                                   Defendants-Appellees/Cross-Appellants.

---

Appeals from the United States District Court
For the Southern District of Mississippi
(1:94-CV-108-BrR)

---
June 9, 1998

Before POLITZ, Chief Judge, BENAVIDES and PARKER, Circuit Judges.

POLITZ, Chief Judge:[*]

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Brenda Gail Ritzer and nine individuals residing and owning property located near a closed landfill in Harrison County, Mississippi, brought suit against T.L. James Construction, Inc., Dixie Contractors, Inc., Mississippi Leasing Inc., Harrison County, and William Gilchrist, Jr., alleging causes of action for private response costs under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)[1] and state claims of negligence, nuisance, strict liability, trespass, and misrepresentation. In a bench trial on the CERCLA claims, at the conclusion of the plaintiffs' case the district court granted defendants judgment as a matter of law under Fed.R.Civ. P. 52(c). Thereafter the district court dismissed without prejudice the remaining state law claims. We affirm the dismissal of the CERCLA action but vacate the dismissal of the state law claims and remand for further proceedings thereon.

## BACKGROUND

In 1969, defendants James, Dixie and Mississippi Leasing acquired a certain tract of property in Harrison County, Mississippi. The tract was subdivided and the three companies retained joint ownership of one 40-acre portion. In 1978, defendant Gilchrist, pursuant to a management contract authorizing him to act on behalf of the defendant property owners, leased the 40-acre tract to defendant

---

[1] 42 U.S.C. §§ 9601-9675 (1994).

Harrison County for use as a landfill.

On August 4, 1978, the Mississippi Bureau of Pollution Control, a division of the Mississippi Department of Natural Resources, issued the County a permit to operate a sanitary landfill on five acres located in the northwest quarter of the 40-acre tract. In October 1981, the County sought permission from the State of Mississippi to expand the landfill. The State conducted an investigation and environmental geologist Michael Seal, reported the land proposed for the expansion was unsuitable for a sanitary landfill. The request to expand was denied and in March 1983 the County decided to close the landfill, although it had been granted permission to dispose of dry trash thereon. In mid-1986 the County stopped receiving all waste at the site and submitted a closure plan. In March 1989, the BPC acknowledged to the County that the State of Mississippi's regulatory requirements for closing the landfill had been met.

During the landfill's operation the neighboring property owners observed that their water omitted an unpleasant odor, changed colors and began to taste bad. In 1993 the plaintiffs hired a consulting firm to perform an environmental assessment of their property. Based on the information obtained, the plaintiffs formed the opinion that hazardous material had been deposited at the landfill, leaching of those materials had occurred, and there was a threat that the substances had migrated into

3

their water wells and onto their property. The present action followed, in which plaintiffs invoked CERCLA, to recover response costs and a declaratory judgment, and state claims of negligence, nuisance, strict liability, trespass, and misrepresentation.

Following extensive discovery, the CERCLA claims were litigated. Upon conclusion of plaintiffs' case-in-chief, after three days of trial, the court invoked Fed.R.Civ.P. 52(c) and granted the defendants judgment as a matter of law. The court found that plaintiffs had failed to prove the release or threatened release of hazardous substances which did or could contaminate their property. Acting *sua sponte* the court dismissed the state law claims without prejudice. Plaintiffs moved for relief under Fed.R.Civ.P. 59(e) requesting that the court retain jurisdiction over the state law claims. The court denied the motion and plaintiffs timely appealed. Defendants cross-appeal the dismissal without prejudice.

## ANALYSIS

In our *de novo* review of the district court's decision to grant judgment as a matter of law we apply the same legal standard as it did.[2] Credibility determinations, the weighing of evidence and inferences drawn from the facts are

---

[2]**Omnitech Int'l, Inc. v. Clorox Co.**, 11 F.3d 1316 (5th Cir. 1994); **Price v. Marathon Cheese Corp.**, 119 F.3d 330 (5th Cir. 1997).

left to the finder of fact and such findings will not be disturbed unless clearly erroneous.[3]

We first address the CERCLA claims.  In order to establish a *prima facie* case for relief under Section 107(a) of CERCLA, the plaintiffs must prove: (1) the site in question is a "facility"; (2) the defendants are responsible persons; (3) a release or threatened release of a hazardous substance[4] has occurred; and (4) the release or threatened release has caused the plaintiffs to incur response costs. [5]

The district court found that plaintiffs failed to prove that the landfill had released or threatened a release of a hazardous substance onto their property.  The district judge found that consultants, hired by the plaintiffs, analyzed the soil and water in areas deemed most likely to have contamination, but that their analyses did

---

[3]Fed R. 52(a); **Conkling v. Turner**, 18 F.3d 1285 (5th Cir. 1994).

[4]Title 42 U.S.C. § 9601(14) defines a "hazardous substance" as: (A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C. § 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C. § 6901 et seq.] has been suspended by Act of Congress), (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 12 of the Clean Air Act [42 U.S.C.A. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15...

[5]**Amoco Oil, Co. v. Borden, Inc.**, 889 F.2d 664 (5th Cir. 1989).

not indicate any hazardous substance had been released from the landfill. In addition, neither of the plaintiffs' experts, John Szabo[6] nor geologist Burton Kemp, could provide evidence or testimony to support the plaintiffs' theory that hazardous waste had migrated from the landfill onto their property. Finally, Bill Barnett, Chief of the Groundwater Division of the Mississippi Department of Environmental Quality, testified that, based upon his personal knowledge of the landfill, the records of his department as the state enforcement authority, and his review of all data and findings obtained by both parties, there was no evidence of offsite contamination from the landfill.

The district judge also found that there was no threatened release of hazardous substances. The plaintiffs allege hazardous substances were received in the sanitary landfill and rainwater falling on the landfill could leach those hazardous substances into shallow groundwater under the landfill through permeable sand and silt strata in the vicinity of the site. The district judge found that the plaintiffs' theory of a threatened release was based entirely upon speculation and conjecture. Our review of the record likewise persuades. We cannot accept the plaintiffs' theory of a threatened release. Whether a release or

---

[6]Szabo was offered as an expert "in recognizing...environmental concerns" from records of landfill operations.

threatened release has caused a party to incur response costs must be determined on a case-by-case basis, with a focus on whether the hazard at issue justified any response actions.[7] The trial court concluded, "apart from a generalized assumption concerning the contents of sanitary landfills, the plaintiffs have offered no evidence of specific hazardous substances which have been, or are about to be, released from the site." Assuming the existence of hazardous substances at the landfill, the plaintiffs did not prove the release of any substance at the landfill or onto the surrounding properties, the justification for response costs in the form of specific evidence, or the justification for response costs as the result of a violation of federal or state law.[8] The district court did not err in finding that plaintiffs failed to prove a release or threatened release and the judgment dismissing the CERCLA claims is affirmed.[9]

**Supplemental Jurisdiction**

The standard of review, for both a denial of a Rule 59(e) motion to alter or

---

[7]**Amoco Oil.**

[8]*See* **Licciardi v. Murphy Oil U.S.A., Inc**, 111 F.3d 396 (5th Cir. 1997) (responsible parties are not liable under CERCLA, unless there is evidence they posed a threat to the public or the environment justifying a response action).

[9]We find neither error nor abuse of discretion in the trial court's exclusion of the proffered testimony and report of Michael Seal. He was not designated as an expert in accordance with Local Rules.

amend a judgment and the district court's decision to exercise supplemental jurisdiction, is abuse of discretion. [10]   We conclude that the district court abused its discretion in dismissing the state law claims.  28 U.S.C. § 1367(c) provides, in pertinent part, that the district courts may decline to exercise supplemental jurisdiction over a claim if,  "...the district court has dismissed all claims over which it has original jurisdiction...."[11]  This rule of law generally presents an appropriate course of action in many instances, but "it is neither absolute nor automatic." [12]   In *Carnegie-Mellon Univ. v. Cohill*,[13] the Supreme Court offered some guidance for district courts in their exercise of supplemental jurisdiction pursuant to *United Mine Workers v. Gibbs*.[14]

> Under Gibbs, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.  When the balance of these factors indicates that a case properly belongs in state court, as when the

---

[10]**FDIC v. Fuller**, 994 F.2d 223 (5th Cir. 1993); **Noble v. White**, 996 F.2d 797 (5th Cir. 1993).

[11]28 U.S.C. § 1367(c)(3)(1994).

[12]**Newport Limited, v. Sears, Roebuck and Co.**, 941 F.2d 302, 307 (5th Cir. 1991).

[13]484 U.S. 343 (1988).

[14]383 U.S. 715 (1966).

8

federal-law claims have dropped out of a lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. [15]

Our review of the record, aided by the briefs and oral argument of counsel, persuades that the district court abused its discretion in declining to exercise jurisdiction after dismissing the CERCLA claims. All of the factors weigh in favor of exercising supplemental jurisdiction. Judicial economy, convenience, and fairness would be served, and comity would not be offended by a determination of the plaintiffs' state claims in federal court. The state claims arise from the same facts underlying the CERCLA claims, there are no novel or unsettled issues of Mississippi law,[16] and the claims were dismissed at an advanced stage of the litigation.[17]

The record reflects that the district judge had heard three days of testimony

---

[15]484 U.S. at 350.

[16]**Cinel v. Connick**, 15 F.3d 1338 (5th Cir. 1994).

[17]*See* **Newport Limited v. Sears Roebuck and Co.**, 941 F.2d 302 (5th Cir. 1991) (for purposes of maintaining pendent jurisdiction over state-law claims, the late stage of litigation, as well as other factors, distinguished case from ordinary cases in which the federal claims are disposed of early in the life of the litigation); **Doddy v. Oxy USA, Inc.**, 101 F.3d 448 (5th Cir. 1996) (district court did not abuse its discretion in maintaining jurisdiction over state claims in case that had been in litigation for more than two years, had more than 300 motions filed, and had required both parties to do extensive discovery).

9

on the federal claims, and was familiar with the parties, procedural history, facts, and essential legal arguments. Judicial economy and convenience militate in favor of completion of the state law claims by the court *à quo*, rather than require the parties to refile their pleadings, motions, designations of experts, and other related matters in state court. Further, it is apparent that the parties have made a significant investment of resources herein. The discovery process was extensive and entailed over 30 depositions. More than ten expert witness designations and approximately 3,000 pages of testimony were produced prior to trial, and nearly 400 exhibits were to be offered into evidence at trial. In addition, the plaintiffs originally filed this action in federal court, neither of the parties contemplated litigating this case in state court until the court dismissed the state claims. "Hesitant though we may be in rejecting the exercise of discretionary authority by the trial court, we are compelled to do so when we consider the resources, public and private, already invested in this lawsuit, clearly distinguishing it from the ordinary cases in which the federal claims are disposed of early in the life of the litigation."[18]

The order dismissing the state law claims without prejudice is vacated and the matter is remanded to the district court for further proceedings consistent

---

[18]**Newport Limited**, 941 F.2d at 308.

herewith.

AFFIRMED in part, VACATED and REMANDED in part.